```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF MISSISSIPPI
                  JACKSON DIVISION


WILLIE MCGREGORY, SR. AND
LUCY MCGREGORY                                       PLAINTIFFS

VS.                         CIVIL ACTION NO. 3:06CV561TSL-JCS

THE CITY OF JACKSON, MISSISSIPPI,
ET AL.                                               DEFENDANTS
```

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiffs Willie McGregory, Sr. and Lucy McGregory for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and the cross-motion for summary judgment by defendants City of Jackson, Mississippi, Mayor Frank Melton, in his official capacity as the Mayor of Jackson, Mississippi, and the Jackson City Council.[1]  Having considered the memoranda of authorities, together with attachments, submitted by the parties, the court

---

[1] In addition to the City, City Council and Mayor Melton, plaintiffs have named as defendants City of Jackson police officers Willie Allen, Lee Robinson, Walton McJordan and Charles Banks.  Although plaintiffs initially sought summary judgment on their claims against these officers, plaintiffs ultimately acknowledged that they cannot identify any one of these officers as having been involved in any of the alleged wrongdoing that is the subject of their complaint.  Consistent with this acknowledgment, the parties have advised that they have reached an agreement to dismiss these individual defendants without prejudice.  A separate order of dismissal has been entered as to these defendants.  Therefore, references herein to "defendants" are to the municipal defendants only.

concludes that plaintiffs' motion should be denied and that defendants' motion is well taken and should be granted.

Plaintiffs filed this lawsuit seeking to recover damages based on claims of false arrest and excessive force under 42 U.S.C. § 1983, and under state law, of wrongful arrest, false imprisonment, assault and battery, malicious prosecution and abuse of process, all of which claims are based on an incident that occurred on May 18, 2005. On that date, plaintiff Willie McGregory, Sr. was working at his tire and auto repair shop on Capitol Street in Jackson when his son, who was being pursued by Jackson police officers, drove up, entered the shop and demanded the keys to the senior McGregory's truck; Mr. McGregory refused.[2] Following a verbal exchange with police officers from inside the shop, McGregory, Jr., wielding an assault rifle, began firing in the direction of the officers. Several officers returned fire, and McGregory, Jr. stepped back inside the shop. When the gunshots were fired, Mr. McGregory lay down inside the building to protect himself, all the while pleading with his son to give himself up. In the exchange of gunfire, McGregory, Jr. was hit in

---

[2] McGregory, Jr. had earlier been pulled over for outstanding warrants, and according to defendants, when he was pulled over, he attempted to run over an officer and fled the scene. Officer Lee Robinson overheard the description of the incident and the suspect's vehicle on the radio dispatch, and learned that the suspect was carrying a weapon. Officer Robinson saw the vehicle, and followed it to the tire shop. When McGregory, Jr. stepped out of the vehicle with a weapon, Officer Robinson called for backup.

the leg by a shot fired by JPD officer Walton McJordan; after being hit, he went back inside the shop, and his father eventually prevailed on him to surrender. McGregory, Jr. walked out of the building and gave himself up to the police. McGregory, Sr. followed his son out of the building with his hands up.

Plaintiffs later filed this lawsuit under 42 U.S.C. § 1983 and state law for wrongful arrest and excessive force, based on allegations that although McGregory, Sr. "never took any acts of aggression toward any police officer and had not committed any crime," but rather had done what he could to get his son to surrender, nevertheless, upon exiting the building, he was ordered by police officers to lie down on the ground, which he did, and was then handcuffed behind his back and ordered to roll over on his back by an as yet unidentified officer. Plaintiffs claim that when he responded that he could not roll over, one (unidentified) officer held a gun to his head and told him he would "blow his f------ brains out if he didn't roll over." He was again told to roll over, and when he could not comply, an (unidentified) officer kicked him in the ribs, breaking his ribs in several places.[3] He

---

[3] Although they have propounded discovery to defendants, and deposed nearly every officer known to have been on the scene, plaintiffs have been unable to identify the officer or officers who committed the alleged acts of excessive force. None of the officers who were present admits to having been involved in the events at issue and none recalls having seen anything or having any knowledge of who may have been involved in the arrest of Mr. McGregory. Plaintiffs insist that the Jackson Police Department is involved in a "cover-up" of the incident.

was then pulled up off the ground, and placed in a patrol car to be transported to the police station.  Mr. McGregory alleges he complained that the handcuffs were on too tight and were causing him pain; but no one bothered to check the handcuffs or to loosen them.  At the station, Mr. McGregory was questioned and released.

In their motion, plaintiffs argue they are entitled to summary judgment on the issue of liability because defendants have no proof to contradict Mr. McGregory's version of events, i.e., that while lying on the ground, he was handcuffed behind his back (too tightly), and that after he was handcuffed, a Jackson police officer kicked him in the ribs, held a gun to his head and threatened his life.  Plaintiffs note that while Mr. McGregory does not know the identity of the officer who apprehended, handcuffed, kicked and threatened him, his testimony as to the incident stands uncontroverted in the record, given that none of nearly forty officers who were on the scene at the time of Mr. McGregory's arrest has denied the incident.  Rather, each has been deposed and testified that he either cannot remember or did not see the officer who apprehended and/or allegedly kicked and threatened plaintiff.  Plaintiffs submit that since defendants have not come forward with any facts to contradict Mr. McGregory's

testimony as to what transpired, it follows that plaintiffs are entitled to summary judgment.[4]

Clearly, however, a conclusion that defendants have no proof to dispute plaintiffs' version of the facts does not automatically entitle plaintiffs to summary judgment. Plaintiffs are only entitled to summary judgment if the undisputed material facts establish that they are entitled to judgment as a matter of law. See Neely v. Regions Bank, Inc., 262 Fed. Appx. 630, 632, 2008 WL 217760, 1 (5th Cir. 2008) ("Summary judgment is proper when the undisputed material facts establish that the moving party is entitled to judgment as a matter of law."); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 [91 L. Ed. 2d

---

[4] In their motion, plaintiffs declare that they

> must prevail on their Motion for Summary Judgement because the Defendants . . . have simply not produced any facts whatsoever regarding the critical claims at issue. Rather, the Defendants either simply have no information to dispute the Plaintiffs' allegations, or the Defendants, as well as all fact witnesses presented by the Defendants, suffer from a case of 'collective amnesia' and/or obstinately refuse to produce any facts regarding the events at issue.

In their response to defendants' summary judgment motion, plaintiffs acknowledge that the evidence presented by defendants, including most pertinently defendants' expert report, "may be sufficient to withstand the grant of partial summary judgment to Plaintiff on the Section 1983 claim," and they would thus appear, implicitly at least, to have withdrawn their motion for summary judgment on their § 1983 claim. However, in view of subsequent arguments in their brief, it is not clear that they have done so, and therefore, the court considers plaintiffs' motion for summary judgment on all claims.

5

265] (1986) ("A movant is entitled to summary judgment under Fed.R.Civ.P. 56 when the moving papers and affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law."). As defendants insist in their own motion for summary judgment, it is manifest that even if all plaintiffs' factual assertions are taken as true, that is, that Mr. McGregory was arrested without probable cause and was subjected to excessive force, plaintiffs would not be entitled to judgment as a matter of law. On the contrary, defendants submit, not only are plaintiffs not entitled to judgment as a matter of law, but defendants are themselves entitled to summary judgment on all plaintiffs' claims. According to defendants, as to plaintiffs' § 1983 claim against them, plaintiffs have no competent proof that Mr. McGregory's alleged false arrest and/or his alleged injuries were caused by an official policy, practice or custom of the City, a prerequisite to the imposition of governmental liability, see infra. And they submit that plaintiffs cannot prevail on their state law claims because plaintiffs' allegations concern acts which amount to "malice," and hence which were committed, if at all, outside the course and scope of the offending officer's employment, and therefore are acts for which the City may not be held liable under the Mississippi Tort Claims Act, see infra.

As there is no respondeat superior liability under § 1983 for violations of constitutionally protected rights, Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978), liability against municipal defendants may only be found where the constitutional injury is the result of a "policy or custom" that may be fairly attributable to official policymakers, id. at 694. The Fifth Circuit has defined a "policy or custom" as

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the governmental entity's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
> 2. A persistent, widespread practice of government officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984) (en banc and per curiam). See also Yetiv v. Hall, 132 Fed. Appx. 1, 12005 WL 19500, *2 (5th Cir. 2005) (explaining that "[t]o establish [municipal] liability, the violation must be caused by a municipal policy or custom reflecting a deliberate or conscious choice by city policymakers, or by an official with final policymaking authority[.]").

Although plaintiffs have asserted a § 1983 claim for wrongful arrest, and assert that they have established, or at least created a triable issue, on the question whether there was probable cause

7

for Mr. McGregory's arrest, plaintiff has made no effort to show that the Jackson Police Department (JPD) had a policy, custom or practice of making arrests without probable cause.

As to their claim under § 1893 for excessive force, plaintiffs herein do not contend that Mr. McGregory's injuries were the result of any formal policy of the JPD; rather, they contend his injuries occurred as a result of what was in effect a custom and practice of the JPD, which they submit impliedly condoned officers' use of excessive force by failing to ensure that complaints of excessive force were properly investigated and offending officers duly punished.  In support of this theory, plaintiffs have offered the opinion of their expert, Fred Robinette III, who has opined that although Mr. McGregory's alleged treatment and resulting injuries were in direct violation of JPD's *official* departmental policy, the attack on Mr. McGregory occurred as a result of a "Departmental custom and practice of deliberate indifference to serious police misconduct."  Robinette contends that within the JPD, there is a "cultural environment" in which officers guilty of police brutality do not file written reports, as required under JPD policy, and in which officers lie about and cover up wrongdoing by themselves and/or their fellow officers, all of which manifests deliberate indifference on the part of JPD management to serious official misconduct by JPD officers, which indifference in turn further encourages police

8

officers to commit constitutional violations without fear of sanction or retribution. Robinette concludes that such deliberate indifference is a causative factor in the civil rights violations and injury of Mr. McGregory at the hands of the JPD. He claims, in other words, that while there is no affirmative policy allowing the use of excessive force against detainees or arrestees, there exists a culture and custom which allows JPD officers to physically abuse detainees with impunity.

Robinette states:

> It has been my experience while investigating excessive force allegations against police officers that officers are reluctant to be truthful about their observations, even if they disagree with acts that they have seen fellow officers commit.
>
> In departments where there is a system wide commitment to a high level of professional and ethical integrity, officers will answer truthfully when questioned, even if they do not volunteer information. In departments that have developed a culture of accepting misconduct, the norm is for officers to protect each other and not be truthful when questioned by an investigator.
>
> Internal Affairs Investigator Sandra Stasher truthfully stated in her testimony that she has also experienced untruthfulness among officers when conducting internal affairs investigations for the Jackson Police Department.

Robinette's opinion is premised primarily on his conclusions that (1) within the JPD, officers often do not report incidents of excessive force in which they have been involved or witnessed, so that many episodes of excessive force are never investigated; and (2) within the Jackson Police Department, the "norm" is for

9

officers to protect each other and to not be truthful when questioned by an investigator.  However, there is no record evidence to support either conclusion.

First, the only evidence offered by plaintiffs regarding JPD officers' alleged failure to report excessive force concerns Mr. McGregory's claim that is the subject of this lawsuit.  It is undisputed that JPD's Internal Affairs Division did not undertake an investigation of Mr. McGregory's allegation of excessive force following the incident, and that the first and only investigation ever made was by the City's Legal Department after this lawsuit was filed.  Plaintiffs claim the failure to investigate was a direct result of the failure of the officers on the scene to report, which was consistent with the "culture" within the JPD of covering up wrongdoing by police officers.

According to plaintiffs, the suggestion that some forty, mostly highly experienced officers, were on the scene and yet none saw anything and none knows anything about Mr. McGregory's arrest and attack, strains reason and credibility.  They maintain that one or more of the officers must have been involved in and/or seen the attack, and yet none came forward to report the incident, notwithstanding the ostensible policy of the JPD requiring reporting of incidents of excessive force.  They submit that the officers' "collective amnesia" results "in a culture and a practice standard that allows events such as those experienced by

10

Mr. McGregory to take place without any fear of reprisal from the department."

Plaintiffs also point to proof that following the alleged incident, after he was transported from the station back to his shop, Mr. McGregory spoke with Jackson Police Detective James Roberts and told the detective he had been kicked when he was arrested. Officer Roberts included Mr. McGregory's statement in a written report recounting the events of that date, and in his deposition, the detective recalled that he had also verbally reported Mr. McGregory's statement to his commanding officer, Preston Carter. However, there is nothing to indicate that Carter, or any of Detective Roberts' superiors, ever read his report, and Carter testified not only that he did not recall having read the report, but that he also did not recall Detective Roberts' having mentioned Mr. McGregory's statement about being kicked. Carter testified that if there was any mention of Mr. McGregory's claim, it did not make an impression with him, and was not a specific report of an alleged incident of excessive force. Had that been the case, he said, the allegation would have been investigated. Plaintiffs dispute this, and submit that the most reasonable inference from the evidence is that these officers' failure to report Mr. McGregory's allegation to Internal Affairs was to cover up wrongdoing by fellow officer(s).

11

Even assuming for the sake of argument that plaintiffs' evidence was sufficient to create an inference and supports a finding that the failure of one or more JPD officers to report this alleged incident of potential excessive force to JPD's Internal Affairs Division for investigation was part of a "cover up," as plaintiffs allege, that finding alone would not support the imposition of liability against the municipal defendants because this single incident does not establish a policy, custom or practice of not reporting and/or not investigating incidents or claims of potential excessive force.  Plaintiffs have presented no evidence that other instances of excessive force went unreported, nor any evidence to show that any policymaker for the City was aware that in this instance, or any other, officers failed to report an event or events of excessive force.  See Thompson v. Upshur County, 245 F.3d 447, 463 (5th Cir. 2001) ("Our precedent makes clear that deliberate indifference on the part of a policymaker cannot generally be shown from a single violation of constitutional rights or expert testimony")(citation omitted).

In support of Robinette's further assertion that in the course of investigations which are undertaken, officers routinely lie and conceal information of their own wrongdoing or that of their fellow officers, Robinette relied solely on certain testimony from Sandra Stasher, who was and currently is an investigator with JPD's Internal Affairs Division, but who, at the time of her investigation in this case, was assigned as an

12

investigator with the City's Legal Department.  As noted by Robinette in his report, Stasher testified generally that in an investigation into claims of excessive force, officers may not be entirely truthful.  Robinette quotes the following testimony from Stasher:

> Q.  Would it be typical for you, then, to take statements from officers in an investigation?
> A.  Correct.
> Q. ... But if you're taking statements from officers, have you found in your experience that officers may not tell you the whole truth of what happened in a given situation?
> A.  Correct.
> Q.  You've found that?
> A.  Correct.
> Q.  That's a problem, correct?
> A.  Correct.
> Q.  I would imagine it makes your job more difficult, and it's human nature for folks to protect their own, correct?
> A.  Correct.

Contrary to the impression suggested by Robinette, and by plaintiffs in their own motion and in response to defendants' motion, Stasher did *not* testify that there is a culture within the JPD of officers' covering for each other, or that she has regularly encountered officers' lying and covering for each other. Fairly construed, Stasher testified that "some" of her investigations are inconclusive, and while she could not quantify how often that occurs, she stated than more often than not she is able to get a good idea of what happened.  She agreed that a "possible" reason for an inconclusive investigation may be that officers tend to protect each other, but when asked "whether or not in [her] experience [her] investigations are often coming up

13

inconclusive[5] because the cops won't tell you what happened," she stated, "I can't say that that's the case. ...  I can't say that's the reason."  When pressed by plaintiffs' counsel, Stasher conceded only that "it's possible" that could be one of the reasons.  Stasher was also clear that throughout the JPD, officers know that if they kick, beat or threaten an arrestee, or do anything excessive, they will suffer disciplinary action.  She agreed that officers, in general, may not want to snitch on their fellow officers, but she also stated that "they're faced with disciplinary action if they lie[,] [s]o it's not a real big problem."  She did agree, too, that "it's possible" officers may not bring to her attention something that could result in disciplinary action, which is to say, they may not volunteer information; but according to Robinette, his experience with departments in which there "is a system wide commitment to a high level of professional and ethical integrity," is that officers will answer truthfully when questioned, "even if they do not volunteer information."  There is nothing in Stasher's testimony, or otherwise in the record, tending to show that there is any custom or pattern or practice of officers' lying about or covering up episodes of excessive force.  Assuming in this case that Mr. McGregory was subjected to excessive force, and further assuming

---

[5] As the court reads her testimony, contrary to the insinuation in plaintiffs' counsel's questioning, Stasher never testified that her investigations were "often" inconclusive; she testified only that "some" are inconclusive, but she could "not give . . . a percentage" of times that has occurred.

14

that JPD officers have lied about what they did (or did not do) or what they saw (or did not see), and that there has been a "cover-up" concerning this incident, that is not sufficient to hold the city liable, as this single episode, not involving a policymaking official, does not tend to establish an official "policy" of permitting or condoning excessive force.

In sum, therefore, as to plaintiffs' § 1983 claim against the municipal defendants, the record simply does not support Robinette's conclusion that there exists a "cultural environment" within the JPD of officers failing to report police brutality and lying and covering up wrongdoing by themselves and/or their fellow officers. It follows that there is no basis to support Robinette's further conclusion that this "cultural environment" manifests deliberate indifference on the part of JPD management to serious official misconduct by JPD officers. Accordingly, plaintiffs' § 1983 claim will be dismissed. See Munoz v. Orr, 200 F.3d 291, 301 (5th Cir. 2000) (stating that "if the basis for an expert's opinion is clearly unreliable, the district court may disregard that opinion in deciding whether a party has created a genuine issue of material fact").

In the court's opinion, plaintiffs' state law claims against the municipal defendants should likewise be dismissed. The Mississippi Tort Claims Act (MTCA), Miss. Code Ann. §§ 11-46-1 *et seq.*, "provides the exclusive civil remedy against a governmental entity or its employees for acts or omissions which give rise to a

15

suit." Simpson v. City of Pickens, 761 So. 2d 855, 858 (Miss. 2000). Under the Act, a governmental entity potentially may be held liable for its employees' acts within the course and scope of their employment.

Here, defendants correctly argue that even if a JPD officer used excessive force, as alleged by plaintiffs, defendants cannot be held liable for the actions of such officer if the officer's actions were "malicious. Mississippi Code Annotated § 11-46-5(2) states:

> For the purposes of this chapter *an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations*.

(Emphasis added.) Further, Mississippi Code Annotated § 11-46-7(2) states:

> An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties. *For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense.*

(Emphasis added). "'These statutes unambiguously state that an employee can be found to be acting outside the course and scope of employment if acting with malice.'" City of Jackson v. Powell,

16

917 So. 2d 59, 72 (Miss. Ct. App. 2005) (quoting Pearl River Valley Water Dist. v. Bridges, 878 So. 2d 1013, 1014-15 (Miss. Ct. App. 2004)).

In City of Jackson v. Powell, 917 So. 2d 59 (Miss. 2005), the court affirmed the trial court's conclusion that the actions of police officers in continuing to beat and kick an arrestee after he had already been subdued and handcuffed and was offering no resistance, were malicious. Id. at 72. The City was therefore not liable for the actions of the officers, who were acting outside the course and scope of their employment. Id. In the case at bar, plaintiffs seek to avoid summary judgment, arguing that "there is simply nothing in the record to suggest that the officers acted with malice." Plaintiffs' argument is entirely inconsistent with their claim that the offending officer kicked Mr. McGregory in the ribs when Mr. McGregory would not (could not) turn over as the officer directed, and that the officer then held a gun to his head and threatened to blow his brains out. Such conduct, assuming it occurred, cannot reasonably be characterized as anything less than malicious.[6]

---

[6] Plaintiffs note that defendants' expert has opined that Mr. McGregory's injuries were "incidental under the circumstances and did not rise to the level of unreasonableness or unintentional." The expert's interpretation of the facts is contrary to plaintiffs' version of events, which the court, for purposes of the present motion, accepts as true.

Plaintiffs also note that all of the officers who were questioned testified that there would have been "no excuse" for an officer to kick and use a gun to threaten an arrestee who is already handcuffed and subdued, and all purported to agree, in response to questioning by plaintiffs' counsel, that such conduct

17

Plaintiffs' allegation that Mr. McGregory was handcuffed too tightly would not necessarily rise to the level of malice; but neither is this claim actionable.  According to § 11-46-9(1)(c) of the MTCA, governmental entities and their employees engaged in the performance of duties or activities related to police or fire protection are immune from claims arising from alleged tortious conduct when acting within the course and scope of their employment or duties "unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury."  "In order to establish 'reckless disregard,' . . . [plaintiffs] must show facts from which a trier of fact could conclude that: (1) [the officer's] conduct created an unreasonable risk; (2) this risk included a high probability of harm; (3) [the officer] appreciated the unreasonable risk; and (4) [the officer] deliberately disregarded that risk, evincing 'almost a willingness that harm should follow.'"  Vo v. Hancock County, No. 2007-CA-00071-COA, 2008 WL 2025843, 2 (Miss. Ct. App. May 13, 2008).  In Bradley v. McAllister, 929 So. 2d 377 (Miss. Ct. App. 2006), the court concluded that an officer did not act with reckless disregard in

---

would amount to "reckless disregard" for the safety and life of
the arrestee.  Plainly, these officers' responses to hypothetical
questions regarding the legal standard of "reckless disregard"
hold no evidentiary weight.  Had they also been asked whether the
specified conduct would be considered malicious, the officers
would no doubt have responded affirmatively.

18

failing to loosen handcuffs after an arrestee complained they were too tight.  The court stated:

> While there is evidence that McAllister was aware of the risk that the cuffs would tighten and twist once inside the car, and that he disregarded Bradley's complaint, the evidence does not show that there was an unreasonable risk of injury or a high probability of harm.  The only risk of injury shown by the evidence is that of discomfort.  Bradley produced no evidence to show that discomfort was an unreasonable risk, nor did he put forth evidence of any probability of a greater harm.

Id. at. 380.  Accordingly, the City is immune with respect to this claim.

In the court's opinion, summary judgment is also in order with respect to plaintiffs' final charge, that Mr. McGregory was arrested without probable cause.  Plaintiffs have alleged that based on their observations of his conduct, and in particular his having attempted to persuade his son to surrender to police, the officers on the scene knew he was not engaged in any criminal activity, and therefore, in arresting him, acted in reckless disregard of his safety and well being.  However, the evidence does not support plaintiffs' position.  Plaintiffs have presented evidence that one officer, Officer Robinson, heard Mr. McGregory talking to his son from inside the shop; during McGregory, Jr.'s trial, Robinson  testified at one point that he knew Mr. McGregory was trying to get the son to give himself up, but he also testified that he could not hear exactly what the senior McGregory was saying, and merely assumed the father was trying to talk the son into giving himself up.  Contrary to plaintiffs' argument, the

19

evidence does not show that the officers involved in his arrest, whoever they may have been, knew or should have known that he was not involved in the shooting incident, and the officers did not act in reckless disregard of Mr. McGregory's safety and well being by taking him to the station for questioning.[7]

Based on the foregoing, it is ordered that plaintiffs' motion for summary judgment is denied, and it is ordered that the municipal defendants' motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 11th day of September, 2008.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[7] Plaintiffs' expert acknowledges that the officers could reasonably have detained Mr. McGregory for questioning at the scene to determine whether he was involved in any criminal activity; but he opines that they could have determined at the scene that he was not involved and should not therefore have transported him to the station for questioning.